UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 1:22-cr-00016-2 (CJN) |
| v. | : | |
| | : | |
| ALEXIS BUSTOS, | : | |
| | : | |
| Defendant | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the Government requests that this Court sentence Defendant Alexis Bustos to fourteen days' incarceration, thirty-six months' probation, sixty hours of community service, and $500 in restitution.

I.  **Introduction**

Defendant Alexis Bustos, a twenty-seven-year-old busser from Long Beach, California, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars in losses.[1]

---

[1] Although the Statement of Offense in this matter, filed on November 7, 2022, ECF No. 48 at 3, reflects a sum of more than $1.4 million dollars for repairs, as of October 17, 2022, the approximate losses suffered as a result of the siege at the United States Capitol was $2,881,360.20. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

1

Defendant Bustos pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). As explained herein, a sentence of incarceration is appropriate in this case because of the length of time that Bustos remained in the Capitol Rotunda and because, as of the time of this filing, he has not expressed any remorse for his actions.

The Court must also consider that Bustos's conduct on January 6th

, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts and circumstances of Bustos's crime support a sentence of fourteen days' incarceration, thirty-six months' probation, sixty hours of community service, and $500 in restitution in this case.

## II. Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 48 (Statement of Offense), at 1–3.

*Defendant Bustos's Role in the January 6, 2021 Attack on the Capitol*

On January 3, 2021, Bustos travelled from Long Beach, California, to Washington, D.C., with his brother and co-defendant, Bryan Bustos, to protest Congress' certification of the Electoral College vote count.

On January 6, 2021, at approximately 2:04 p.m., Bustos entered the Capitol Grounds, near the north barricade access. Image 1 shows Bustos and his brother and co-defendant, Bryan Bustos (carrying a large flag), captured on video entering restricted U.S. Capitol grounds.



Image 1

At approximately 2:27 p.m., Bustos entered the Capitol Building through the Columbus Doors on the eastern side of the building. Bustos was part of a large crowd that squeezed through one side of the Columbus Doors past the other side which had clearly shattered glass and was still closed. *See* Image 2. He then proceeded further into the Capitol Building to the Capitol Rotunda. Images 2, 3, and 4, show Bustos entering the Capitol, making his way to the Rotunda, and then standing next to the Rotunda Door interior.

  

Image 2              Image 3              Image 4

Bustos remained in the Capitol Rotunda, observing crowds of other rioters stream in and out, until he exited at approximately 2:51 p.m., along with his brother and co-defendant Bryan

3

Bustos. Images 5 and 6 show Bustos meeting his brother next to the Rotunda Door interior and exiting the Capitol Building.

 

Image 5                                                                 Image 6

In total, Bustos remained in the Capitol Building for approximately 24 minutes. After exiting the Capitol, Bustos remained on the Capitol steps with his brother, who filmed a video of the two of them together, in which they appeared jovial, while celebrating that they had entered the Capitol. Image 7 below, is a photo from that video.



Image 7

*The Charges and Plea Agreement*

On September 29. 2021, the United States charged Bustos by criminal complaint with violating 18 U.S.C. § 1752(a)(1); 18 U.S.C. § 1752(a)(2); 40 U.S.C. § 5104(e)(2)(D); and 18 U.S.C. § 5104(e)(2)(G). ECF No. 1. On November 23, 2021, law enforcement officers arrested him in Denver, Colorado.[2] ECF No. 8. On January 13, 2022, the United States charged Bustos by a four-count information including the same violations included in the criminal complaint. ECF No. 22. On November 7, 2022, pursuant to a plea agreement, Bustos pleaded guilty to Count Four of the Information, charging him with parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). ECF No. 45. By plea agreement, Defendant agreed to pay $500 in restitution to the Architect of the Capitol. *Id.* at 6.

According to the PSR, Bustos "agreed with the conduct described in the Statement of Offense," but "did not provide a statement as to his conduct relating to the instant offense during the presentence investigation interview." ECF No. 51 at 7. To date, Bustos has not expressed remorse for his actions on January 6, 2021, to the Government's knowledge.

### III.  Statutory Penalties

Bustos now faces a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Bustos faces up to six months of imprisonment and a fine of up to $5,000. He must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

---

[2] According to the PSR, Bustos was living in Denver, Colorado, at the time of his arrest. However, he is originally from Long Beach, California, and returned to Long Beach to live with his family in December 2021. ECF No. 51 at 8.

**IV.     Sentencing Factors Under 18 U.S.C. § 3553(a)**

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, the Section 3553(a) factors weigh in favor of a sentence of fourteen days' incarceration, thirty-six months' probation, sixty hours of community service, and $500 in restitution.

**A.     The Nature and Circumstances of the Offense**

The attack on the U.S. Capitol on January 6th posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Bustos's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Bustos, the absence of violent or destructive acts is not a mitigating factor. Had Bustos engaged in such conduct, he would have faced additional criminal charges.

Bustos squeezed through the half-closed Columbus Doors with obviously shattered glass panes to enter the Capitol Building, then remained in the building for almost thirty minutes during

6

a hectic time in the riots, and after exiting the building, instead of showing remorse, made a video with his brother celebrating their time storming the Capitol. As of the time of this filing, Bustos has not expressed any remorse for his actions. Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

    **B.**    **The History and Characteristics of Bustos**

According to the PSR, Bustos does not have a criminal history. ECF No. 52 at 8. Despite not having a criminal history, however, Bustos's actions on January 6th indicate a real need for a sentence that provides specific deterrence, as discussed further below. Additionally, as of the time of filing, Bustos has not expressed remorse for his actions on January 6th. According to the presentence report, during his interview, Bustos agreed with his conduct as described in the Statement of Offense, but made no additional statements regarding his offense. ECF No. 52 at 7.

    **C.**    **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law**

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6th riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

    **D.**    **The Need for the Sentence to Afford Adequate Deterrence**

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this

7

defendant. 18 U.S.C. § 3553(a)(2)(B-C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

### *General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

The gravity of these offenses demands deterrence. *See United States v. Mariposa Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 ("But the concern I have is what message did you send to others? Because unfortunately there are a lot of people out here who have the same mindset that existed on January 6th that caused those events to occur. And if people start to get the impression that you can do what happened on January 6th, you can associate yourself with that behavior and that there's no real consequence, then people will say why not do it again."). This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

As more fully discussed above, the facts of this case, including Bustos's remaining in the Capitol for almost thirty minutes and yet expressing no remorse, strongly weigh in favor of a sentence that will specifically deter Bustos from participating in any future illegal acts.

### E.     The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the Government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[3] This Court must sentence Bustos based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6th riot.

Bustos has pleaded guilty to Count Four of the Information, charging him with parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than

---

[3] Attached to this supplemental sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants. That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

9

necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

"Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). "[A] defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." Consequently, Section 3553(a)(6) neither prohibits nor requires a sentencing court "to consider sentencing disparity among codefendants." *Id.* Plainly, if Section 3553(a)(6) is not intended to establish sentencing uniformity among codefendants, it cannot require uniformity among all Capitol siege defendants charged with petty offenses, as they share fewer similarities in their offense conduct than codefendants do. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Tr. at 48-49 ("With regard to the need to avoid sentence disparity, I find that this is a factor, although I have found in the past and I find here that the crimes that occurred on January 6 are so unusual and unprecedented that it is very difficult to find a proper basis for disparity.") (statement of Judge Chutkan).

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records. After all, the goal of

minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095. It follows that a sentencing court in a Capitol siege petty offense case is not constrained by sentences previously imposed in other such cases. *See United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes.") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. For that reason, a permissible sentence imposed for a petty offense is unlikely to cause an unwarranted disparity given the narrow range of permissible sentences. The statutory range of for a petty offense is zero to six months. Given that narrow range, a sentence of six months, at the top of the statutory range, will not create an unwarranted disparity with a sentence of probation only, at the

bottom. *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr. at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson); *United States v. Dresch*, D.D.C. 21-cr-71 (ABJ), Aug. 4, 2021 Sent. Hrg. Tr. at 34 ("Ensuring that the sentence fairly reflects where this individual defendant falls on the spectrum of individuals arrested in connection with the offense has largely been accomplished by the offer of the misdemeanor plea because it reduces his exposure substantially and appropriately.") (statement of Judge Berman Jackson); *United States v. Peterson*, D.D.C. 21-cr-309, Sent. Hrg. Tr. at 26 (statement of Judge Berman Jackson) (similar).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

- *United States v. Anthony Scirica*, 1:21-cr-00457 (Judge Cooper sentenced Scirica to fifteen days' incarceration. Scirica, among other things, remained inside the Capitol building for thirty-one minutes and heard alarms going off, and failed to show remorse, claiming that experience would make a good story. But, in that case, Scirica led rioters through the Statuary Hall towards the House Chambers, trying to find electors. He also chanted "USA" while observing violence against police officers.)

- *United States v. Marcos Panayiotou*, 1:22-cr-00055 (Judge Friedrich sentenced Panayiotou to fourteen days' intermittent confinement and thirty-six months'

probation. Panayiotou, among other things, was inside the Capitol for almost forty minutes, during which time he passed shattered glass and heard alarms, but did not show any remorse for his actions. In that case, Panayiotou also wore a hat which said "Make Politicians Afraid Again," attempted to assist others in entering the Capitol, and deleted incriminating items from his cell phone.)

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.[4]

---

[4] Numerous judges of this Court have concluded that a sentencing court in a case involving a violation of a Class B misdemeanor under 40 U.S.C. § 5104 may impose a "split sentence" – a period of incarceration followed by a period of probation – for defendants convicted of federal petty offenses. *See, e.g.*, 18 U.S.C. § 3561(a)(3); *see also, United States v. Little*, 21-cr-315 (RCL), 2022 WL 768685, at *1 (D.D.C. Mar. 14, 2022) (concluding that "a split sentence is permissible under law and warranted by the circumstances of this case"); *see generally* Appellee's Brief for the United States, *United States v. Little*, No. 22-3018 (D.C.) (filed Aug. 29, 2022). Approximately nine judges of this district have authorized and imposed such split sentences pursuant to law. *But see United States v. Panayiotou*, No. 22-CR-55 (DLF), 2023 WL 417953 (D.D.C. Jan. 25, 2023) (holding that such sentences are impermissible under Section 3561(a)(3)).

In the alternative, courts have also issued sentences under 18 U.S.C. § 3563(b)(10), which authorize limited periods of intermittent confinement as a condition of probation. The courts have

13

## V.     Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the Government recommends that this Court sentence Defendant Bustos to fourteen days' incarceration, thirty-six months' probation, sixty hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

---

consistently found that such a sentence is permissible for up to two weeks' imprisonment served in one continuous term. *See, e.g., United States v. Mize*, No. 97-40059, 1998 WL 160862, at *2 (D. Kan. Mar. 18, 1998) (quoting Section 3563(b)(10)'s legislative history in interpreting the term to mean a "brief period of confinement, e.g., for a week or two, during a work or school vacation," described above and reversing magistrate's sentence that included 30-day period of confinement as a period condition of probation). To this end, at least four of the judges of this Court have imposed sentences under §3563(b)(10). Indeed, a sentencing court may also impose multiple intervals of imprisonment under §3563(b)(1). *See United States v. Anderson*, 787 F. Supp. 537, 539 (D. Md. 1992); *Panayiotou*, 2023 WL 417953, at *9 ("in a case in which the government exercises its prosecutorial discretion to allow a defendant to enter a plea to a single petty misdemeanor, it can request that a court impose a sentence of intermittent confinement as a condition of probation.") (citing 18 U.S.C. § 3563(b)).

In this district, at least two judges have similarly imposed multiple terms of imprisonment, to be served intermittently, consistent with this subsection. Such sentences are particularly appealing in light of the fact that it has been nearly three years since the World Health Organization first declared the COVID-19 outbreak a global pandemic in March 2020, and over two years since the first COVID-19 vaccine was administered in the United States in December 2020, allowing detention facilities to now more safely handle the logistical and practical concerns associated with multiple stints of imprisonment.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:    /s/ *Thomas Campbell*
        Thomas D. Campbell
        Trial Attorney
        Criminal Division, Fraud Section
        U.S. Department of Justice
        1400 New York Ave. NW
        Washington, DC 20005
        Tel: (202) 262-7778
        Email: thomas.campbell@usdoj.gov

## CERTIFICATE OF SERVICE

On this 9th day of February, 2023, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

                              By:    /s/ *Thomas Campbell*
                                       Thomas D. Campbell
                                       Trial Attorney
                                       Criminal Division, Fraud Section
                                       U.S. Department of Justice
                                       1400 New York Ave. NW
                                       Washington, DC 20005
                                       Tel: (202) 262-7778
                                       Email: thomas.campbell@usdoj.gov